CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 7 2007

JOHN F. CORCORAN, CLERK
BY: /s/ B. Bright
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KENNETH A. BURKE, | ) |
|     Plaintiff, | ) Civil Action No. 7:07-cv-00554 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| GERALD A. MCPEAK, et. al., | ) By: Hon. James C. Turk |
|     Defendant(s). | ) Senior United States District Judge |

Plaintiff Kenneth A. Burke, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Burke alleges that the New River Valley Regional Jail ("the jail"), where he is currently incarcerated, is overcrowded and that the living conditions there are violative of his constitutional rights in several respects. The court conditionally filed the complaint to allow Burke to comply with filing requirements under 28 U.S.C. § 1915(b), notified him that his allegations failed to state a claim against any of the defendants he had named, and granted him an opportunity to amend his complaint to particularize his claims. He has submitted a motion to amend, which the court will grant.[1] Upon consideration of the complaint as amended, however, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[2]

---

[1] In his complaint as amended, Burke names the following jail officials as defendants: Gerald A. McPeak, Acting Superintendent; Officer Johnson, who is in charge of cleaning the jail; Bobby Brown, in charge of food service; Gene Johnson, Director of the Virginia Department of Corrections; Dr. Moses, jail doctor; and Margrett Falls, nurse. He moves to dismiss all claims against Defendant Betty Acker, who was named in the initial complaint.

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

## I. Plaintiff's Allegations

Burke's complaint offers the following general description of the aspects of jail life that he finds unacceptable. The jail does not have adequate facilities for the number of inmates housed there, leaving many inmates sleeping on the floor, sitting on the floor to eat their meals, sharing too few sinks, mirrors, showers and toilets. The noise level is high, and the crowded conditions lead to fights. The facilities are not cleaned often or well enough, and some areas are not cleaned at all. Because of the high number of inmates, each prisoner receives only two uniforms to wear, but no underwear or socks, and laundry services are offered only once per week. The air and air vents are dusty because the ventilation system is inadequate for the number of people housed in the jail. Outside recreation opportunities are limited to two hours per week, and the gymnasium is used to house inmates serving weekend sentences. The food service provides meals high in starch and low in protein and vitamins, served cold, with very little meat or fruit. Female jail officers are assigned to work in areas where they may see male inmates using showers and toilets. The cells have no natural light, and an artificial light stays on twenty-four hours per day.

The medical staff is inadequate to care for the high numbers of inmates housed at the jail. Inmates must wait one to three days to receive medication for a headache and much longer to see a doctor. They first pay a $10.00 medical co-payment to see a nurse, who decides whether they should see a doctor. The jail has no chronic care program for diseases like Hepatitis C or AIDS and charges a $13.50 transportation fee to take inmates to an outside doctor or hospital, if the inmate pays the full cost of such outside care. The cells do not have call buttons to summon help in the event that an inmate suffers a medical emergency or is injured in a fight. Not enough guards are

posted in the housing areas. "MRSA skin infection is a very serious problem here," such that officers will not come into the housing areas without wearing rubber gloves.

Burke told the jail staff when he arrived at the jail that he had Hepatitis C and needed a proper medical diet. At first, the nursing staff placed him on the diet, but shortly thereafter, stopped giving him this diet without first having him examined by a doctor. On October 29, 2007, Burke submitted a request to the medical staff. The next day he was called to the medical unit. He informed the nurse that he was having problems urinating and having bowel movements. The nurse gave him some medication for the latter problem and promised to put him on the list to see the jail doctor, but would not send him to a liver specialist. When he filed his complaint in early November, he had not seen any doctor.

In his amended complaint, Burke asks the court to add Dr. Moses, the jail's doctor, as a defendant. Burke alleges that Moses has refused to treat him for Hepatitis C and gastrointestinal disease, although medication is available for both of these conditions. Moses also will not refer Burke to see doctors who specialize in these diseases. Although another doctor told Burke in March 2007 that he should wear a cervical collar at all times, Moses will not allow Burke to wear such a collar at the jail. Burke admits that Moses prescribed a "more nutritionally balanced diet" for him, but then Margrett Falls allegedly took him off the diet,[3] so he names her as a defendant also.

Burke seeks one million dollars in monetary damages and injunctive relief. He offers a list of changes that jail officials should make regarding living conditions for inmates. He also wants to make this case a class action and engage in discovery.

---

[3] In response to a grievance about discontinuation of the diet, Dr. Moses answered that Burke's medical condition did not require the diet that had previously been ordered for him.

3

Case 7:07-cv-00554-JCT-mfu   Document 13   Filed 12/27/07   Page 3 of 8   Pageid#: 87

## II. Living Conditions

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. Even harsh and uncomfortable prison conditions cannot be considered punishment, however, so long as they are rationally connected to a legitimate, nonpunitive, penological purpose and are not excessive in relation to that purpose. Id. As a practical matter, the contours of pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997) (excessive force); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs).

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the

4

challenged conditions, see Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling v. McKinney, 509 U.S. 25, 31 (1993).

Under these principles, Burke fails to state any constitutional claim against any of the defendants. Although the court specifically notified him of the need to amend his complaint to state specific facts concerning how the challenged living conditions affected him, he fails to show any respect in which he, personally, has been injured or even adversely affected by any of them. Nor does he present any facts indicating a "substantial risk" that he will suffer any serious or significant injury from overcrowding, limited showering and recreation opportunities, cold food, or too few changes of clothing. Because his allegations as amended fail to meet the Strickler requirement to show injury, the court will dismiss without prejudice all of Burke's claims related to living conditions at the jail, pursuant to § 1915A(b)(1).

### III. Medical Care

To prove that his course of medical treatment in prison amounted to a violation of the Eighth Amendment, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). First, the plaintiff must show that, objectively, his need for medical treatment was sufficiently serious. Second, plaintiff must show that defendants acted with deliberate indifference toward his serious medical need. Estelle, 429 U.S. at 104-105. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. Rather, the inmate must

5

show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed, that he drew that inference, and then failed to respond reasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837-844 (1994). See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (because evidence did not show that doctors knew about inmate's pituitary gland tumor, failure to diagnose and treat it did not state Eighth Amendment claim even though inmate ultimately went blind). Officials show deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to necessary medical care. Estelle, 429 U.S. at 104. The type and amount of medical care an inmate receives is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga.1994). The mere fact that a prisoner may believe he had a more serious medical need that the defendants thought or that he required different treatment than he received does not establish a constitutional violation. See, e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975).

A medical treatment claim cannot be brought against a supervisory official of a state jail unless plaintiff alleges that the supervisor was personally connected with a delay or deprivation of treatment. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Non-medical officials may rightfully rely on the medical staff to make determinations about the proper course of treatment for an inmate's medical conditions. Id. at 855.

Burke's allegations fail to state any actionable claim against the defendants he has named. The court specifically advised Burke that he should amend his complaint to provide specific facts concerning what knowledge each defendant had about his medical conditions, the specific responses he received when he requested treatment, and what treatment and/or special

diet he believes he should be receiving for his Hepatitis C. Burke fails to provide such facts.[4] He does not allege any specific details whatsoever about whether (and if so, when) Dr. Moses actually examined or evaluated him for hepatitis, gastrointestinal disease, or neck injury. While these conditions may qualify as serious, Burke does not state what he told Dr. Moses about these conditions or whether he exhibited to the doctor any symptoms related to these conditions that required immediate treatment. Burke also fails to state what his current symptoms are or what treatment he believes should have been provided. As a prisoner, he has no constitutional right to receive a treatment or be evaluated by a liver specialist just because he believes he should have such care. Similarly, the mere fact that another doctor told Burke in March 2007 that he should wear a cervical collar states nothing more than a disagreement that doctor (and Burke) and Dr. Moses regarding appropriate treatment for the symptoms Burke was suffering when Dr. Moses was responsible for evaluating his need for treatment. Such disagreements over course of treatment, whether between doctors or between patient and doctor, are not actionable under § 1983. In any event, even after being specifically advised to amend, Burke fails to state any facts indicating that the lack of the desired treatments has aggravated his symptoms or complicated his conditions in any way. Thus, the court finds that he fails to demonstrate either a serious, current need for medical treatment or deliberate indifference on the part of Dr. Moses.

---

[4] Burke complains that jail officials will not provide him with free copies of his medical records to submit to the court. However, the court did not direct him to provide records at this time; the court directed him to amend his complaint itself to offer details about his condition and his attempts to obtain treatment.

7

As Burke fails to demonstrate any serious medical need for the special diet that Nurse Falls allegedly discontinued, the court also cannot find that Burke states any claim against this defendant. All other defendants rightfully relied on Dr. Moses and other medical officials to determine the proper course of treatment for Burke. Moreover, as Burke fails to demonstrate that he has any serious medical need for treatment during his stay at the jail, he fails to show that jail medical policies have caused him harm or pose any substantial risk of harm to him in the future. The court finds that all Burke's complaints about his medical care and the medical policies of the jail must be dismissed, pursuant to § 1915A, for failure to state a claim. An appropriate order shall be entered this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 27th day of December, 2007.

/s/ James C. Turk
Senior United States District Judge